UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**      'O'      JS-6

| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
|---|---|---|---|
| Title | IN RE: THOMAS THAI BACHMAN | | |

Bankruptcy No. 6:08-bk-19706 MJ; Adversary No. 6:12-ap-01122 MJ

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (In Chambers:) APPEAL FROM BANKRUPTCY COURT (filed June 25, 2013)

## I. INTRODUCTION

On July 31, 2008, debtors Thomas Thai Bachman and Susan Ruth Bachman filed a voluntary Chapter 7 bankruptcy petition. Bankruptcy Case. No. 6:08-bk-19706-MJ. On November 21, 2008, the debtors received a discharge, and on January 23, 2009, the bankruptcy case was closed. Bk. Dkts. 30, 34.

On March 30, 2012, creditor Carol Matlow filed a motion to reopen the case. Bk. Dkt. 35. The bankruptcy court reopened the case, bk. dkt. 36, and on April 4, 2014, Matlow initiated an adversary proceeding against debtor Thomas Thai Bachman ("Bachman"), Bankruptcy Case. No. 6:12-ap-01122-MJ. On May 12, 2013, the bankruptcy court held a trial on the adversary proceeding. On June 5, 2013, the bankruptcy court issued a Memorandum of Decision After Trial for Nondischargeability of Debt. On June 13, 2013, Bachman appealed the bankruptcy court's decision to this Court.

## II. BACKGROUND

The Court takes these facts from the bankruptcy court's memorandum of decision, as appellant does not dispute the vast majority of the bankruptcy court's factual findings. Opening Br. 2. Matlow first met Bachman, who was married to Susan Ruth Bachman, at a Fisher Investments promotional seminar in April 2003. The two began a romantic relationship which lasted several years. During this romantic relationship, Bachman was engaged in the practice of buying and reselling ("flipping") houses as investment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**    'O'    JS-6

| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
|---|---|---|---|
| Title | IN RE: THOMAS THAI BACHMAN | | |

properties. To support these purchases, Bachman asked Matlow to loan him $50,000 in March 2005 (the "first loan"). Bachman promised to repay this $50,000 with interest in a year. Matlow agreed to this deal, and lent Bachman the $50,000.

In March 2006, Matlow spoke with Bachman about repayment of the first loan. Bachman paid her $1,000, but explained that he did not have funds available to repay the entire loan at that time. Matlow, although she continued to speak with Bachman about the repayment of the first loan, did not demand immediate repayment. In December 2006, Bachman asked Matlow for a second $50,000 loan (the "second loan"). The bankruptcy court found that Bachman represented to Matlow that he needed the second loan "to hold as cash in his [Charles] Schwab account to show liquidity so that he could qualify for a second trust deed loan on his house." Order at 4. Bachman promised that he would hold the $50,000 for six months, then return the funds, plus an additional $2,000. Based upon this representation, Matlow lent the second $50,000 to Bachman.

Within a month, Bachman deposited the funds in his Schwab account, and began using the funds to buy and sell options. On January 31, 2007, the cash balance in the account was $326, with the rest of the funds invested in options. Between January and May 2007, the cash balance in the Schwab account varied. By May 31, 2007, around the time Bachman had promised to repay Matlow the second loan, the cash balance was up to $124,268 due to the disbursement of the anticipated trust deed loan. Bachman, however, did not repay either the first or second loans, claiming "lack of liquidity." Bachman continued to use the funds in the Schwab account to pay his mortgage and other personal expenses.

Matlow and Bachman's romantic relationship continued for an additional two years, with Bachman occasionally making small payments to Matlow when she inquired about repayment of the loans. In the spring of 2008, Bachman broke off the romantic relationship. In August 2008, Bachman and his wife filed a Chapter 7 bankruptcy petition. The bankruptcy petition did not reflect Bachman's debts to Matlow, and Matlow thus did not receive notice of the bankruptcy. Bachman was discharged on November 21, 2008. Bk. Dkt. 30. Bachman continued to make small periodic payments to Matlow through 2009 and 2010.

Matlow first became aware of the bankruptcy after attorneys became involved with Matlow's efforts to collect on the loans. On March 30, 2012, Matlow moved to reopen

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'    JS-6 |
|---|---|---|---|
| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
| Title | IN RE: THOMAS THAI BACHMAN | | |

the bankruptcy, and initiated an adversary proceeding against Bachman, seeking to preserve the first and second loans as nondischargeable debt. Bk. Dkt. 30. On May 12, 2013, the bankruptcy court held a trial on the adversary proceeding. On June 5, 2013, the bankruptcy court issued a Memorandum of Decision After Trial for Nondischargeability of Debt. As relevant here, the bankruptcy court found that the second loan was not dischargeable, because it had been obtained by a false representation under 11 U.S.C. § 523(a)(2)(A).

### III. LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 8013 provides:

> On appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

U.S.C. Bankr. R. 8013. A "finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States. v. United States Gypsum Co., 333 U.S. 364, 395 (1948). Questions of law are reviewed de novo. In re Luna, 122 B.R. 575, 576 (9th Cir. BAP 1991).

### IV. DISCUSSION

The bankruptcy court found that the second loan was not dischargeable under 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2) provides that a bankruptcy discharge does not apply to any debt

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
| Title | IN RE: THOMAS THAI BACHMAN | | |

>    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

To show that a debt is nondischargeable under this provision, a creditor must establish that:

>    (1) the debtor made . . . representations;
>
>    (2) that at the time he knew they were false;
>
>    (3) that he made them with the intention and purpose of deceiving the creditor;
>
>    (4) that the creditor relied on such representations; [and]
>
>    (5) that the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

In re Hashemi, 104 F.3d 1122, 1125 (9th Cir. 1996). "[M]ere failure to fulfill [a] promise to pay [a] debt is dischargeable, unless [the] debtor made promise while not intending to pay or knowing that payment would be impossible." In re Lund, 202 B.R. 127, 131 (B.A.P. 9th Cir. 1996). "Intent to deceive can be inferred from surrounding circumstances." In re Kennedy, 108 F.3d 1015, 1018 (9th Cir. 1997).

>    Here, the bankruptcy court concluded that Bachman had obtained the second loan by making false representations to Matlow. Specifically, the bankruptcy court found that "Bachman asked for the money only for purpose of showing liquidity in his account so that he could qualify for a line of credit against his house." Order at 11. Contrary to this representation, however, Bachman "immediately tapped" the $50,000 to invest in options. Id. By immediately plowing the funds into risky investments, rather than letting the funds sit untouched in the account, Bachman revealed that his representations to Matlow were false when made. Moreover, the Court found that Matlow relied on these representations when she made the second loan. Matlow testified that she was concerned about Bachman's failure to pay back the first loan, and only made the second loan on the condition that the funds would sit untouched in Bachman's account. Finally, Matlow was damaged by Bachman's false representation, because Bachman never repaid the second

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
|---|---|---|---|
| Title | IN RE: THOMAS THAI BACHMAN | | |

loan. Accordingly, the bankruptcy court concluded that Matlow had established that the second loan was nondischargeable under § 523(a)(2)(A).

Bachman raises only a single contention in his appeal: that the bankruptcy court erred in its interpretation of Bachman's representation that he required the second loan to "show liquidity." The bankruptcy court, Bachman contends, incorrectly interpreted the phrase "show liquidity" as a promise to hold the $50,000 as cash in the account. Based on this interpretation, the bankruptcy court found that Bachman's immediate investment of the funds into options—leaving as little as $326 in the form of cash—demonstrated that Bachman never intended to use the $50,000 to "show liquidity."

Bachman argues that promising to use the funds to "show liquidity" did not mandate that the funds be kept in the form of cash. Instead, the phrase "liquidity" refers to the ability to quickly and easily convert assets into cash. Bachman cites a number of cases in which courts discuss cash-convertible assets as "liquid." See, e.g., In re Smith, 178 B.R. 946, 955 (Bankr. D. Vt. 1995) ("Accountants define liquidity as the ability to liquidate an asset or pay off a liability at a fair price within one year."). Bachman asserts that, under this interpretation of "liquidity," the options he purchased with Matlow's $50,000 could quickly be converted back into cash. As such, investing the $50,000 into the options did not render the $50,000 illiquid, and was therefore consistent with his representations to Matlow that he needed the funds to "show liquidity."

The Court finds this argument unpersuasive. Contrary to Bachman's argument, the bankruptcy court did not give the technical term "liquidity" talismanic importance in its analysis. Instead, the bankruptcy court properly focused on how a reasonable person in Matlow's position would interpret Bachman's representation that the funds would be used to "show liquidity." See In re Sharma, 2013 WL 1987351 at *10 (B.A.P. 9th Cir. May 14, 2013) ("A court may also infer intent to deceive where the debtor makes a false representation that the debtor knows, or should know, will induce the creditor to make a loan."). Here, Matlow testified at the adversary proceeding trial that she interpreted this statement to mean that Bachman would hold the investment as cash. For example, Matlow testified on cross-examination:

> Q: Was it your understanding that he was going to place the $50,000 you gave him into an account that only had your $50,000 and there would be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O'  JS-6 |
|---|---|---|---|
| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
| Title | IN RE: THOMAS THAI BACHMAN | | |

    absolutely no other money in that account and that it would just sit in there and there would be exactly $50,000 in that bank account?

    A: That is what he led me to believe.[1]

Transcript 50:22-51:2.

    Reviewing for abuse of discretion, the Court finds that the bankruptcy court did not err in finding that Matlow's interpretation of Bachman's promise was reasonable. Although the term "liquidity" may carry different meanings in different contexts, here, a reasonable person in Matlow's shoes would interpret Bachman as promising not to use the funds for investments. This is especially true in light of the "surrounding circumstances" leading up to the second loan. In re Kennedy, 108 F.3d at 1018 (9th Cir. 1997). Specifically, Matlow and Bachman had a close, romantic relationship, and were therefore highly informal in how they discussed and memorialized both the first and second loan. Moreover, at the time Bachman asked for the second loan, Matlow had already lent Bachman $50,000 to invest in real estate and not yet been repaid. Because she had yet to be repaid on the first loan, she was hesitant to extend an additional loan, and only did so after Bachman promised her that the funds would only to be used to "show liquidity." In that context, the precise definition of the term "liquidity" is irrelevant: a reasonable person would have interpreted Bachman as representing that he would not put the $50,000 at risk by making additional investments. Bachman revealed this representation to be false by immediately investing nearly the entire loan principle into options. Accordingly, the bankruptcy court did not err by finding that Bachman intended to deceive Matlow, and therefore did not err by concluding that the second loan was nondischargeable pursuant to § 523(a)(2)(A)

---

    [1] Bachman criticizes Matlow's answer to this question as "vague[]," and thus insufficient on which to base a finding." The Court finds this unconvincing, as Matlow later clarified that: "That is what Mr. Bachman swore to me." Transcript 51:13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'  JS-6

| Case No. | 5:13-cv-01130-CAS | Date | July 17, 2014 |
|---|---|---|---|
| Title | IN RE: THOMAS THAI BACHMAN | | |

## IV. CONCLUSION

In accordance with the foregoing, the Court hereby AFFIRMS the judgment of the bankruptcy court.

IT IS SO ORDERED.

|  | : | 00 |
|---|---|---|
| Initials of Preparer | | CMJ |